UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

FILED
DEC 30 2002
SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

OPHTHALMIC MUTUAL INSURANCE
COMPANY, A RISK RETENTION GROUP,

Plaintiff

v.

JANE L. CLINE, INSURANCE COMMISSIONER
OF THE STATE OF WEST VIRGINIA,
in both her official and
personal capacities,

Defendant

Civil. No. 2:02-1489

VERIFIED COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

1. By way of a December 20, 2002 Order, Defendant Jane L. Cline, Insurance Commissioner of the State of West Virginia, is seeking to regulate the operations of Plaintiff Ophthalmic Mutual Insurance Company, a Risk Retention Group ("OMIC") in violation of federal law.

2. This is an action brought to declare unconstitutional and to enjoin Defendant's enforcement of the December 20, 2002 Order and the state insurance law on which it is based—W. Va. Code § 33-20C-4—against OMIC.

3. This action is also brought to enjoin Defendant from violating the rights of OMIC under the Liability Risk Retention Act of 1986, 15 U.S.C. §§ 3901-3906 ("LRRA").

4. OMIC is authorized to bring this action by Article I, Section 8 and Article VI of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 2201.

JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1343(a)(3), and 1343(a)(4).

1

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (b).

## THE PARTIES

7. OMIC is a risk retention group ("RRG") authorized and doing business pursuant to federal law——the LRRA.

8. Under the LRRA, a RRG can be established as a liability insurer chartered or licensed under the laws of any state.

9. OMIC is a RRG chartered and licensed under the laws of the State of Vermont since 1993 to write liability insurance coverage for ophthalmologists. From 1987 to 1993, OMIC was chartered and licensed under the laws of the State of Colorado.

10. OMIC's principal place of business is located at 655 Beach Street, San Francisco, California 94109-1336.

11. Defendant Jane L. Cline is the Insurance Commissioner of the State of West Virginia and is located at 1124 Smith Street, Charleston, West Virginia 25301.

12. Defendant is sued in her official and personal capacities.

## BACKGROUND

13. Congress first enacted the Product Liability Risk Retention Act of 1981 ("1981 Act") to permit those whose principal activity consists of the manufacture, design, importation, distribution, packaging, labeling, lease or sale of a product or products to pool their resources into "risk retention groups" for the purpose of providing group members with products liability insurance coverage.

14. By way of the LRRA, Congress amended the 1981 Act to expand the availability of this alternative insurance mechanism to other businesses and types of liability insurance. The LRRA

2

responded to the problems encountered by business policyholders when their liability insurance coverage became unavailable and unaffordable as a result of economic cycles in the insurance industry.

15. These swings in economic cycles can cause severe dislocation in the insurance marketplace for certain businesses and professional individuals, particularly those that are unable to provide for liability coverage through a self-insurance plan.

16. A RRG consists of businesses or professionals engaged in a related trade, service, or industry that bond together to form what amounts to their own liability carrier.

17. RRGs provide a stabilizing force in an otherwise unstable marketplace because they continue to provide insurance to members at times when traditional insurers withdraw from the marketplace for business reasons unrelated to the consumer's interests.

18. Congress recognized that an impediment to creation of a nationwide system to distribute liability insurance was state regulation of the insurance business. Generally each state requires an insurer to obtain a state license, often known as a certificate of authority, before being permitted to do business in that state; and each state applies its own licensing, form, and rate standards, which differ from state to state.

19. The LRRA expressly preempts state insurance laws and authorizes duly constituted groups to offer their members liability insurance coverage in every state without their having to obtain a license from each state and without their having to comply with each state's particular form, rate, and other regulatory requirements.

20. Congress did not leave RRGs unregulated. In order for a RRG to be eligible to take advantage of the LRRA, the group must be domiciled in at least one state where it is subject to all of that state's insurance regulatory laws, including those relating to financial reporting, financial examination and solvency, policy forms, rate-making, and numerous other laws relating to conduct

in the marketplace, such as disclosure, policy cancellations, and the like. In the other states where the group operates, it must register and comply with trade practice and tax laws.

21. With limited exceptions not applicable here, "a risk retention group is exempt from any *State law, rule, regulation, or order* to the extent that such law, rule, regulation, or order would . . . make unlawful, or regulate, directly or indirectly, the operation of a risk retention group." 15 U.S.C. § 3902(a)(1) (emphasis added).

22. The scope of the exemption from state insurance laws in the LRRA is broad:

> (b) **Scope of exemptions.** The exemptions specified in subsection (a) apply to laws governing the insurance business pertaining to—
>
>> (1) liability insurance coverage provided by a risk retention group for—
>>
>>> (A) such group; or
>>>
>>> (B) any person who is a member of such group;
>>
>> (2) the sale of liability insurance coverage for a risk retention group; and
>>
>> (3) the provision of—
>>
>>> (A) insurance related services;
>>>
>>> (B) management, operations, and investment activities; or
>>>
>>> (C) loss control and claims administration (including loss control and claims administration services for uninsured risks retained by any member of such group);
>>
>> for a risk retention group or any member of such group with respect to liability for which the group provides insurance.

*Id.* § 3902(b)(1)-(3) (emphasis added).

## BASIS FOR CLAIM

23. OMIC incorporates by reference the averments of Paragraphs 1 through 22 of this Complaint as if expressly set forth herein.

24. OMIC is a duly-constituted RRG that meets each of the standards established by Congress:

4

 (a) OMIC is chartered and licensed under the laws of the State of Vermont;

 (b) Each of the members of OMIC has an ownership interest in OMIC, and all owners have purchased liability insurance from OMIC;

 (d) The members of OMIC are ophthalmic practitioners and their business entities;

 (e) OMIC complies with all trade practices and tax laws in the states in which it operates and its business practices comply with West Virginia's trade practices and tax laws.

25. OMIC primarily writes insurance covering the professional liability of its members.

26. OMIC insures the professional liability of nearly 3,000 members of the American Academy of Ophthalmology.

27. OMIC presently operates as a professional liability insurer for ophthalmologists in 49 states, including the State of West Virginia.

28. OMIC has been insuring the professional liability of its members in West Virginia since 1987, when it registered to do so under the LRRA.

29. As of December 31, 2001, OMIC insured 44 physician members in West Virginia. That number grew in 2002 to 64 physicians.

30. On December 20, 2002, Defendant executed and transmitted to OMIC a document titled:

**PROCEEDINGS BEFORE JANE L. CLINE**
**INSURANCE COMMISSIONER OF THE STATE OF WEST VIRGINIA**
**RE: OPHTHALMIC MUTUAL INSURANCE COMPANY**
**GEORGE E. TOMA, M.D.**
**ORDER NO. 02-AP-149**

A true and correct copy of the document ("Order") is attached hereto as Exhibit "A."

31. The Order purports to impose certain obligations on OMIC and further

5

restrains/enjoins OMIC from taking certain action with respect to a member insured's professional liability policy. Specifically, the Order provides for the following, in relevant part:

> Currently pending before the commission is a complaint by the captioned insured with respect to a notice dated October 30, 2002, issued by [OMIC]. Said notice referenced a non-renewal of a policy OMC0007293 regarding professional liability insurance.
>
> ... *[S]aid notice is violative of W.VA. Code § 33-20C-4* ....
>
> ... Accordingly, *the aforesaid notice of non-renewal is hereby STAYED and [OMIC] shall continue coverage* at the rate approved as of the date of this Order, and in accordance with the provisions of the manual approved as of the sate of this Order, and until further Ordered. *[OMIC] is therefore directed to prepare a premium statement within ten days of the entry hereof* .... In the interim, *the Commission will attempt to set a hearing, at the convenience of the parties, counsel, hearing examiner and to expedite the same to the extent possible.*
>
> Any statutory requirement to offer tail coverage, and any pending offer with respect to said tail coverage, shall also be STAYED and the statutory time frames with respect to the same shall again commence to run upon entry of Final Order following the aforesaid hearing.

(Order, Ex. "A" hereto (emphasis added).)

32. Defendant premises the Order on an alleged violation by OMIC of a state insurance law, specifically W. Va. Code § 33-20C-4, which sets forth certain notice requirements with respect to the cancellation and nonrenewal of malpractice insurance policies:

> No insurer shall fail to renew a policy or contract providing malpractice insurance unless written notice of the nonrenewal is forwarded to the insured by certified mail, return receipt requested, not less than ninety days prior to the expiration date of the policy.

W. Va. Code § 33-20C-4(a).

33. All of OMIC's policies, including the policy identified in the Order, provide for written notice of an intent to nonrenew of not less than forty-five days.

34. By way of the Order, Defendant seeks to impose a West Virginia state insurance law⎯W. Va. Code § 33-20C-4⎯on OMIC in violation of 15 U.S.C. § 3902(a)(1).

35. W. Va. Code § 33-20C-4 is expressly preempted by 15 U.S.C. § 3902(a)(1), which exempts OMIC from any "State law" that, if applied to OMIC, "would regulate, directly or

6

indirectly, the operation of [OMIC]."

36. The Order is expressly preempted by 15 U.S.C. § 3902(a)(1), which exempts OMIC from any "order" that, if applied to OMIC, "would regulate, directly or indirectly, the operation of [OMIC]."

37. OMIC will suffer irreparable harm to its business interests, including loss of goodwill and business standing, unless Defendant is enjoined from enforcing W. Va. Code § 33-20C-4 against OMIC.

38. An actual and substantial controversy exists between and among the parties to this action.

39. The actions of Defendant against OMIC are in direct conflict with the authorization given by Congress to OMIC to "do business" and "offer insurance" in every state without having to comply with each state's insurance laws.

40. The Order is invalid under the Supremacy Clause of the United States Constitution, Article VI, Section 2, because it:

(a) Provides that OMIC must comply with a West Virginia insurance law in violation of 15 U.S.C. § 3902(a)(1), (b);

(b) Directs who OMIC must insure and sets the terms under which OMIC must insure him in violation of 15 U.S.C. § 3902(a)(1), (b);

(c) Directs OMIC to take certain actions and enjoins OMIC from taking certain actions with respect to a particular insurance policy in violation of 15 U.S.C. § 3902(a)(1), (b); and

(d) Attempts to subject OMIC to the jurisdiction of Defendant for purposes of a hearing under West Virginia insurance law in violation of 15 U.S.C. § 3902(a)(1), (b).

41. The Order and W. Va. Code § 33-20C-4, as applied by Defendant, are in conflict and stand as an obstacle to the accomplishment and execution of the objectives of Congress in enacting the LRRA.

7

42. The Order and W. Va. Code § 33-20C-4, as applied by Defendant, are illegal and invalid under the Supremacy Clause of the United States Constitution, Article VI, Section 2, for the reasons set forth in Paragraphs 40 and 41 of this Complaint.

43. OMIC has a right under the LRRA to provide liability insurance to its members in the State of West Virginia without having to comply with West Virginia insurance laws.

44. The LRRA creates specific obligations that are within the competence of the judiciary to enforce and are intended to benefit OMIC and its members.

45. The protections afforded OMIC by the LRRA are "rights, privileges or immunities" as those terms are used in 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ophthalmic Mutual Insurance Company, a Risk Retention Group, prays for the following relief:

1. The entry of a declaratory judgment declaring that the December 20, 2002 Order attached hereto as Exhibit "A" and W. Va. Code § 33-20C-4, as applied by Defendant, are unconstitutional;

2. The entry of a judgment enjoining Defendant Jane L. Cline and her successors in office from enforcing W. Va. Code § 33-20C-4 against OMIC;

3. An award of costs and attorneys fees pursuant to 42 U.S.C. § 1988 to OMIC;

4. An award of monetary damages to OMIC in an amount to be determined against Defendant Jane L. Cline in her personal capacity; and

5. Such other and further relief as the Court deems necessary and proper.

Respectfully submitted,

*[signature]*

John R. McGhee, Jr. (WVSB # 5205)
Kay Casto & Chaney PLLC
1600 Bank One Center
P.O. Box 2031
Charleston, WV 25227
304) 345-8900


P. Kevin Brobson
Jayson R. Wolfgang
BUCHANAN INGERSOLL
PROFESSIONAL CORPORATION
213 Market Street, Third Floor
Harrisburg, PA 17104
(717) 237-4800

PROCEEDINGS BEFORE JANE L. CLINE
INSURANCE COMMISSIONER OF THE STATE OF WEST VIRGINIA

RE: OPHTHALMIC MUTUAL INSURANCE COMPANY
GEORGE E. TOMA, M.D.

ORDER NO. 02-AP-149

Currently pending before the commission is a complaint by the captioned insured with respect to a notice dated October 30, 2002, issued by Ophthalmic Mutual Insurance Company. Said notice referenced a non-renewal of a policy OMC0007293 regarding professional liability insurance.

According to the notice, the non-renewal is to take effect 01/01/2003. Accordingly, said notice is violative of W.Va. Code §33-20C-4 which states:

(a) No insurer shall fail to renew a policy or contract providing malpractice insurance unless written notice of such non-renewal is forwarded to the insured by certified mail, return receipt requested, not less than <u>ninety</u> days prior to the expiration of the date of the policy. (emphasis added)

Ophthalmic Mutual Insurance Company does not make any argument with respect to timing but, rather, asserts that the aforesaid statute is not applicable to a risk retention group. The undersigned disagrees. Accordingly, the aforesaid notice of non-renewal is hereby STAYED and Ophthalmic Mutual Insurance Company shall continue coverage at the rate approved as of the date of this Order, and in accordance with the provisions of the manual approved as of the date of this Order, and until further Ordered. Ophthalmic Mutual Insurance Company is therefore directed to prepare a premium statement within ten days of the entry hereof, and Dr. George E. Toma, M.D., shall pay the same within ten days of receipt of said statement, and in accordance with any payment plan which may have existed under the expiring policy. In the event that payment is not received Ophthalmic Mutual Insurance Company may petition to lift the aforesaid STAY. In the interim, the Commission will attempt to set a hearing, at the convenience of the parties, counsel, hearing examiner and to expedite the same to the extent possible.

Any statutory requirement to offer tail coverage, and any pending offer with respect to said tail coverage, shall also be STAYED and the statutory time frames with respect to the same shall again commence to run upon entry of Final Order following the aforesaid hearing.

Entered this 20th day of December, 2002.

Jane L. Cline
Insurance Commissioner of the
State of West Virginia

EXHIBIT A

## VERIFICATION

I, Paul Weber, have read the foregoing document and verify that the facts set forth are true and correct to the best of my knowledge, information, and belief. To the extent that the foregoing document and/or its language is that of counsel, I have relied upon counsel in making this Verification.

In understand that any false statements made herein are subject to the penalties of perjury and under the laws of the United States of America.

_____
Paul Weber, JD
Risk Manager
Ophthalmic Mutual Insurance Company

DATE: 12/24/02